UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

BOBBIE W. PATRICK,                                    Civil No. 10-780 (DSD/LIB)

        Plaintiff,

v.                                                                   **REPORT AND**
                                                                      **RECOMMENDATION**

COMMISSIONER OF SOCIAL SECURITY,

        Defendants.

---

Plaintiff Bobbie Patrick seeks judicial review of the decision of the Commissioner of

Social Security ("Commissioner") denying his application for disability insurance benefits

("DIB"). The matter was referred to the undersigned United States Magistrate Judge for Report

and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has

jurisdiction over the claims pursuant to 42 U.S.C. §§ 405(g) and 1283(c). Both parties submitted

motions for summary judgment. For the reasons set forth below, the Court recommends that

Plaintiff's motion for summary judgment be DENIED and the Defendant's motion for summary

judgment be GRANTED.

I.        **BACKGROUND**

    A.        **Procedural History**

On May 10, 2005, Plaintiff filed an application for DIB and a Title XVI application for

Supplemental Security Income ("SSI"). (Tr. 84) [1]. Plaintiff alleged that he became disabled on

March 11, 2005. (Tr. 64). The Commissioner denied Plaintiff's claims on July 28, 2005. (Tr.

---

[1] Throughout this Report and Recommendation, this Court refers to the administrative record [Docket No. 5] for the present case by the abbreviation "Tr."

1

49).  Plaintiff filed a Request for Reconsideration, which the Commissioner also denied on November 14, 2005.  (Tr. 44, 48).  Subsequently, Plaintiff filed a written request for a hearing on December 22, 2005.  Pursuant to Plaintiff's request for a hearing, Administrative Law Judge ("ALJ") Jerome Berkowitz conducted a hearing on July 16, 2007.  (Tr. 11).  At the hearing, Joseph C. Horozaniecki, M.D., medical expert ("ME") and Steven D. Bosch, Vocational Expert ("VE"), testified.  (Tr. 231-245).  After the hearing, on November 2, 2007, the ALJ issued a decision denying Plaintiff's request for benefits.  (Tr. 22).  The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 15-22).  Plaintiff sought review of the decision by the Appeals Council.  (Tr. 11).  However, the Appeals Council denied Plaintiff's request for review.  (Tr. 4-8).  As such, the ALJ's decision became the final decision of the Commissioner.  See 20 C.F.R. §§ 404.981, 416.1481.

**B.  Factual History**

Plaintiff was born on July 5, 1949.  (Tr. 214).  Plaintiff lives alone in an apartment and survives on General Assistance.  (Tr. 215).  Plaintiff finished the eighth grade and possesses a minimal ability to read and write.  (Tr. 215).  Before 1996, Plaintiff intermittently worked various assembly jobs.  (Tr. 241).  From 1996 to 2001, Plaintiff worked running a molding machine.  (Tr. 218, 240).  However, according to Plaintiff, his health and the company's decision to downsize resulted in him losing his job.  (Tr. 219).  After losing his job, Plaintiff looked for other work, but is not doing so now because of his poor health.  (Tr. 219).

Plaintiff suffers from myriad medical conditions that he claims render him unable to work.  Additionally, Plaintiff suffers from diabetes.  (Tr. 221). As a result of Plaintiff's diabetes, he has to check his blood sugar levels every two to three hours.  (Tr. 227).  Plaintiff's sleep apnea makes his sleep schedule irregular.  (Tr. 216).  In addition, Plaintiff has difficulty going to

sleep.  (Tr. 218).  Plaintiff also complains of drowsiness during the day, poor concentration, back pain and leg pain.  (Tr. 219).  Plaintiff states that he can only walk a block or so because of pain in his back.  (Tr. 222).  Plaintiff asserts that his back pain is usually seven or eight on a scale of ten, but reaches ten two to three times per week.  (Tr. 225).  Plaintiff notes that when he is in pain, he is unable to do anything and remains where he is until the pain subsides.  (Tr. 225).

Overall, due to his medical conditions, Plaintiff testified that he can only sit two to three hours before he has to get up and move.  (Tr. 222).  Plaintiff notes that he can lift five to ten pounds for a short distance.  (Tr. 222).  However, Plaintiff claims that he can bend, squat, and climb stairs occasionally.  (Tr. 223-224).

Plaintiff regularly visits with other tenants in his building's lounge.  (Tr. 216).  He also walks around with other tenants and tries to walk around the block at least once each day.  (Tr. 216).  Plaintiff cooks his own meals, washes his own clothes, grocery shops, and vacuums.  (Tr. 217).  He also reads.  (Tr. 217).

### C.    Medical Evidence in the Record

Plaintiff's medical history begins with a visit to Dr. Barr, his treating physician, on August 27, 2003.  (Tr. 97).  Dr. Barr noted that Plaintiff suffered from sleep apnea treated with a continuous positive airway pressure ("CPAP"), obesity, hypertension, and type 2 diabetes.  (Tr. 97, 169).  In addition, the doctor found that Plaintiff's glycemic control was within normal range according to his blood sugar log. (Tr. 97).

Dr. Barr continued to treat Plaintiff's Type 2 diabetes.  (Tr. 98, 99, 115, 116, 166, 169).  On some visits, Dr. Barr found his diabetes well controlled.  (Tr. 102).  However, later, on September 1, 2005, Dr. Barr found his diabetes was poorly controlled.  (Tr. 169).

Additionally, Dr. Barr filled out a Residual Functional Capacity ("RFC") assessment regarding Plaintiff on February 23, 2005. (Tr. 120). The doctor determined that Plaintiff could stand and walk up to two hours a day, sit up to six hours a day, lift and carry occasionally up to 10% of the day, and lift and carry frequently up to 10% of the day. (Tr. 120). Furthermore, Dr. Barr found that Plaintiff would need to shift positions at will during work. (Tr. 120). According to Dr. Barr, Plaintiff could twist, stoop and crouch frequently, but climb stairs and ladders only occasionally. (Tr. 121). Dr. Barr estimated that Plaintiff's conditions would require him to miss one day of work per month. (Tr. 121). Dr. Barr based her findings on Plaintiff's fatigue from obstructive sleep apnea, diabetes, and diabetic retinopathy. (Tr. 120).

Subsequently, on July 11, 2007, Dr. Barr completed a second RFC assessment. (Tr. 143-46). Dr. Barr determined that Plaintiff was incapable of even a low stress job. (Tr. 144). Further, Dr. Barr found that Plaintiff could only sit one hour at a time and stand 30 minutes at a time. (Tr. 144). According to Dr. Barr, Plaintiff could sit four hours total in an eight hour day and needed to be able to get up and walk around every 60 minutes at will. (Tr. 144, 145). Dr. Barr concluded that Plaintiff could lift ten pounds occasionally, lift less than ten pounds frequently, occasionally twist, occasionally stoop, rarely crouch, never climb ladders, and rarely climb stairs. (Tr. 145). In addition, Dr. Barr placed limitations on how often Plaintiff could reach overhead, grasp, turn, and twist objects. (Tr. 146). Ultimately, Dr. Barr noted that Plaintiff's conditions meant he would suffer from good and bad days making it likely that Plaintiff would miss more than four days of work per month. (Tr. 146).

Moreover, doctors at the Minnesota Regional Sleep Disorders Clinic treated Plaintiff for sleep apnea. (Tr. 108). Doctors continually found Plaintiff suffered from sleep apnea. (Tr. 108, 109, 110, 111). One doctor noted that his sleep apnea "responded nicely" to the CPAP. (Tr.

108). However, the doctor also found that actographic studies throughout Plaintiff's treatment revealed frequent nights of very little sleep and frequent periods of prolonged wakefulness. (Tr. 108, 109, 110). To deal with his periods of wakefulness, the doctor prescribed samples of pramipexole. (Tr. 108). In addition, the doctor determined that Plaintiff suffered from severe insomnia. (Tr. 110).

An April 10, 2007 radiology report found plaintiff suffered from multilevel degenerative disease of the lumbar spine with epidural lipomatosis resulting in mild spinal canal stenosis at L3-L4 and L4-L5. (Tr. 135). The radiology report further showed neuroforaminal stenosis present at L4-L5 on the left and abutment of the right S1 nerve root at the L5-S1 level from focal posterior disc protrusion. (Tr. 135).

On July 7, 2007, Plaintiff was treated at the Neurosurgery Clinic for low back and left knee pain. (Tr. 138). After neurological testing, the doctor found 5 out of 5 strength throughout, normal bulk and tone, normal reflexes, no paraspinal tenderness, full range of motion with his lumbar spine, and no increased pain with extension or flexion. (Tr. 138). The doctor noted that Plaintiff suffered from mild degenerative disc disease of the L5-S1 level and a mild central disc bulge with no significant compression of the existing nerve roots. (Tr. 138). The doctor did not find anything that would cause Plaintiff's right knee pain or any suggestion of radicular pain. (Tr. 138).

On September 14, 2007, Joseph C. Horozaniecki, M.D., completed a medical source statement analyzing Plaintiff's RFC. (Tr. 198-203). He determined that Plaintiff could lift and carry up to ten pounds frequently and up to twenty pounds occasionally. (Tr. 198). In addition, Dr. Horozaniecki found that Plaintiff could sit and stand for up to two hours without interruption and walk one hour per day without interruption. (Tr. 199). In total, Dr. Horozaniecki concluded

that Plaintiff could sit two hours per day, stand six hours per day, and walk two hours per day. (Tr. 199). Dr. Horozaniecki placed no limits on Plaintiff's ability to operate foot controls or on Plaintiff's reaching handling, and fingering. (Tr. 200). However, he noted that Plaintiff could reach frequently and push and pull occasionally. (Tr. 200). Dr. Horozaniecki determined that Plaintiff could climb stairs, ladders, stoop, kneel, crouch, and crawl occasionally. (Tr. 201). Finally, Dr. Horozaniecki found that Plaintiff could never work around unprotected heights, moving mechanical parts, vibrations, or operate a moving vehicle. (Tr. 202).

### D. Evidence from the Medical Expert

A medical expert, Dr. Joseph Horozaniecki, M.D., testified at the administrative hearing. (Tr. 231). The ME found Plaintiff's physical impairments to include sleep apnea, chronic low back pain due to lumbar degenerative disk disease, and obesity. (Tr. 232). Based on Plaintiff's physical impairments, the ME imposed a light level exertion level. (Tr. 232). Further, the ME placed additional restrictions on Plaintiff's activity level including not working near any unprotected heights, no exposure to hazardous machinery, no driving commercial vehicles, and only occasional bending, couching, stooping ,and climbing. (Tr. 232-233). Finally, the ME testified that the medical evidence in the record did not support the treating's physician RFC analysis. (Tr. 233). After the hearing Plaintiff produced additional medical records for the ME to review. (Tr. 196-203). Upon reviewing these records, the ME found that Plaintiff additionally suffered from Type 2 diabetes, but reaffirmed the RFC he testified to at the administrative hearing. (Tr. 196-203).

### E. Evidence from the Vocational Expert

In addition, a vocational expert ("VE"), Steven Bosch, testified at the administrative hearing. (Tr. 238). The VE testified that Plaintiff's past work was light and unskilled. (Tr. 242).

The ALJ asked Bosch to consider what jobs a person could perform who was 55-57 years old, with a ninth grade education, impaired by obesity, diabetes, sleep apnea and degenerative disk disease with low back pain, who would be limited to lifting twenty pounds occasionally and ten pounds frequently, and who can stand and walk for six hours a day. (Tr. 242). The ALJ further limited the question to allow for occasional climbing, bending stooping, and crouching while avoiding unprotected heights and dangerous moving machinery. (Tr. 242-43). In response to this hypothetical question, Bosch testified that Plaintiff could perform his past work as a molding machine tender. (Tr. 243). Moreover, Bosch testified that molding machine tender jobs at the light exertional level were available in significant numbers in the state of Minnesota and the national economy. (Tr. 243). However, Bosch further stated that if a molding machine tender job required a person to be on their feet for eight hours a person with Plaintiff's exertional limitations could not perform it. (Tr. 244). Moreover, Bosch noted that missing two or more days a month would not coincide with competitive employment. (Tr. 245). The VE testified that needing to immediately read one's blood sugar rendered necessary by diabetes would not be consistent with a production job. (Tr. 246).

### F. The ALJ's Decision

The ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 22). In reaching his decision, the ALJ purported to apply the required five-step sequential analysis: (1) whether the claimant had engaged in substantial gainful activity; (2) whether the claimant had a severe impairment; (3) whether the claimant's impairment met or equaled a listed impairment; (4) whether the claimant had sufficient RFC to return to his past work; and (5) whether the claimant could do other work existing in significant numbers in the regional or national economy. 20 C.F.R. § 404.1520(a)-(f).

At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial work from March 11, 2005 through his last insured date of December 31, 2006. (Tr. 17). Turning to step two of the analysis, the ALJ determined that Plaintiff suffered severe impairments including obstructive sleep apnea, obesity, type 2 diabetes, and degenerative disc disease. (Tr. 18).

Next, at step three, the ALJ concluded that Plaintiff's impairment or combination of impairments did not meet or equal one of the listed impairments in 20 C.F.R., part 404, subpart P, appendix 1. (Tr. 18). At step four, the ALJ found that Plaintiff had the RFC to perform light work involving frequently lifting up to ten pounds, occasionally lifting up to twenty pounds, standing/walking for a total of six hours in an eight hour workday, with no work around unprotected heights or dangerous moving machinery, no driving commercial vehicles such as a truck or forklift, and only occasional bending, crouching, stooping, and/or climbing ladders or scaffolds. (Tr. 18).

In analyzing Plaintiff's RFC, the ALJ considered all Plaintiff's alleged symptoms and whether they were consistent with the objective medical evidence and other evidence consistent with 20 C.F.R. 404.1529 and 416.929. (Tr. 18). In addition, the ALJ considered opinion evidence in accordance with 20 C.F.R. 404.1527 and 416.927. (Tr. 18). The ALJ determined that Plaintiff's complaints that he was incapable of all work were inconsistent with the record as a whole. (Tr. 19). Specifically, Plaintiff's allegations that his sleep apnea caused severe fatigue were inconsistent with treatment records showing that doctors never prescribed adjustments to his CPAP or prescriptions to assist with sleep difficulties or fatigue. (Tr. 19). In addition, doctors treated Plaintiff's diabetes conservatively with oral medication, diet, and exercise which was inconsistent with a severe disease rendering him unable to work. (Tr. 19). Recent medical records demonstrate that Plaintiff's diabetes was well treated. (Tr. 19). No medical opinion

supported Plaintiff's allegation that he had to check his blood sugar levels at random times. (Tr. 19). Moreover, Plaintiff's assertions of severe level 10 back pain was not supported by medical opinions which found plaintiff suffered from "mild degenerative disc disease" which could be treated with conservative measures. (Tr. 20). Further, even though he complained of extreme back pain, the ALJ noted that Plaintiff did not take any pain medication. (Tr. 20).

Additionally, when making his RFC determination, the ALJ relied upon Plaintiff's activities of daily living. The ALJ found that Plaintiff's daily activities were inconsistent with the severity of symptoms he alleged and did not support a finding of disability. (Tr. 20). In making this determination, the ALJ noted that Plaintiff took care of his personal needs, cooked, did housework, shopped, read, visited other tenants, and handled his own finances and medication. (Tr. 20). Further, the ALJ considered Plaintiff's past work history, which the ALJ determined evinced Plaintiff's lack of motivation to return to work because of his failure to attempt to receive vocational or rehabilitation training to assist in finding employment. (Tr. 20).

When making his RFC finding, the ALJ gave significant weight to the opinion of Dr. Horozaniecki, the neutral medical expert. (Tr. 21). Ultimately, the ALJ concluded that Dr. Horozaniecki's opinion was supported by the medical evidence on the record. (Tr. 21). In contrast, the ALJ declined to place significant weight on Plaintiff's treating physician, Dr. Barr, because it was not supported by objective medical evidence including clinical findings and laboratory diagnostic techniques. (Tr. 21).

Finally, while still at the fourth step of the analysis, the ALJ concluded that Plaintiff could perform his past work as a molding machine tender. (Tr. 21). The ALJ relied on the testimony of the VE who stated that a molding machine tender constituted unskilled light work that was generally performed standing for six hours in an eight work day which was consistent

with a light work exertional level and Plaintiff's limitations. ( Tr. 21). Additionally, based on the

VE's testimony, the ALJ found that significant molding machine operator jobs existed in the

national and regional economy. (Tr. 22). Therefore, the ALJ concluded Plaintiff was not

disabled as defined by the Social Security Act.

## II.      STANDARD OF REVIEW

Congress imposed standards for determining whether a claimant is entitled to Social

Security disability benefits. There are several benefits programs under the Act, including the DIB

Program of Title II (42 U.S.C. §§ 401 et seq.) and the SSI Program ("SSI") of Title XVI (42

U.S.C. §§ 1381 et seq.). Qualified wage earners who become disabled prior to the expiration of

their insured status receive benefits under Title II; Title XVI benefits are available to poverty

stricken adults and children who become disabled. F. Bloch, Federal Disability Law and

Practice § 1.1 (1984). While the two programs have different eligibility requirements, only those

who have a disability are eligible for DIB and SSI. See Randolph v. Barnhart, 386 F.3d 835,

836 (8th Cir. 2004).

"Disability" means "the inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment . . . which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To be eligible for benefits, an individual's impairments must be of "such severity that he is not

only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the Commissioner's decision to deny disability benefits is constrained

to a determination of whether the decision is supported by substantial evidence in the record as a

whole.  Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005).  Substantial evidence means more than a scintilla, but less than a preponderance.  Slusser v. Astrue, 557 F.3d 923, 925 (8th Cir. 2009).  The substantial evidence test requires "more than a mere search of the record for evidence supporting the [Commissioner's] findings." Id.  Rather, the court "must take into account whatever in the record fairly detracts from its weight." Id. (quoting Universal Camera Corp. v. Nat'l Labor Relations Bd., 340 U.S. 474. 488 (1951)).

When reviewing the record for substantial evidence, the Court may not reverse the Commissioner's decision simply because substantial evidence exists to support the opposite conclusion.  Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984).  Moreover, the Court may not substitute its own judgment or findings of fact for those of the ALJ.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).   The court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory."  Dew v. Comm'r of Social Sec., 2010 WL 3033779 at *16 (D. Minn. 2010) (quoting Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987)).  After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).  Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008).  The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." Id.

## III.    DISCUSSION

In this case, Plaintiff challenges the ALJ's decision on three grounds.  First, Plaintiff alleges that the ALJ improperly discounted the opinion of Plaintiff's treating physician who

found Plaintiff had a less than sedentary RFC. (Pl.'s Mem. in Supp. of Summ. Judgment [Docket No. 11], p. 9). According to Plaintiff, based on a sedentary RFC, under the Medical Vocational Guidelines, the ALJ should have found Plaintiff disabled. (Pl.'s Mem., p. 9-10). Second, Plaintiff contends that the ALJ failed to follow the SSA's own regulations which require the ALJ to re-contact a claimant's treating source if the treating source's opinion contains inconsistencies or ambiguities. (Pl.'s Mem., p. 10-11). Lastly, Plaintiff asserts that because the ALJ wrongly determined his RFC, the testimony of the VE in response to the ALJ's hypothetical question relied upon by the ALJ to find that Plaintiff can perform his past work did not constitute substantial evidence. (Pl.'s Mem., p. 11).

**A.      Whether the ALJ Improperly Discounted the Medical Opinion of Plaintiff's Treating Physician**

In his RFC analysis, the ALJ considered the opinion of Plaintiff's treating physician, Dr. Barr, but declined to grant it controlling weight. (Tr. 21). The ALJ provided three reasons for this decision. (Tr. 21). First, he noted that Dr. Barr failed to provide any objective findings to support her conclusions. (Tr. 21). Second, the ALJ found that the record as a whole was inconsistent with Dr. Barr's conclusions. (Tr. 21). Finally, the ALJ determined that the severity of the claimant's subjective complaints were not credible. (Tr. 21).

Plaintiff challenges the ALJ's refusal to rely on Dr. Barr's RFC findings and notes that if the ALJ had properly relied on the report of Dr. Barr, the ALJ would have found that Plaintiff had a sedentary RFC or less. (Pl.'s Mem., p. 9). Based on Dr. Barr's RFC, the Medical Vocational Guidelines Section 201 required the ALJ to make a finding of disabled because Plaintiff is of advanced age, has a history of unskilled work, and possesses limited education. (Pl.'s Mem., p. 9-10). However, Plaintiff points to no specific alleged error that the ALJ made in choosing to rely on Dr. Horozaniecki's opinion rather than Dr. Barr's. In fact, Plaintiff does not

even point to any case law supporting his argument. Instead, he simply assumes that Dr. Barr's opinion was correct without providing any explanation as to why it is superior to Dr. Horozaniecki's opinion and relies upon Dr. Barr's opinion to allege that the ALJ incorrectly applied the Medical Vocational Guidelines. As such, the Court assumes that the Plaintiff simply challenges the ALJ's decision to grant controlling weight to Dr. Horozaniecki's RFC analysis as improper.

"[A] treating physician's opinion is given 'controlling weight' if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " Dolph v. Barnhart, 308 F.3d 876, 878 (8th Cir. 2002). However, a treating physician's opinion "do[es] not automatically control, since the record must be evaluated as a whole." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). An ALJ may discount a treating physician's medical opinion, and adopt the contrary medical opinion of a consulting physician, when the treating source's statements are conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the Record as a whole. See, Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991). The opinion of a treating physician may also be discounted if other assessments are supported by better, or by more thorough, medical evidence. See, Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007); Ward v. Heckler, 786 F.2d at 846. In other words, the ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces him otherwise. Id.

In the present case, the ALJ properly discounted the opinion of Plaintiff's treating physician because it was not based on objective evidence. In choosing to place little weight on Dr. Barr's opinion, the ALJ noted that Dr. Barr's opinion that Plaintiff could only sit four hours a

day and would miss four days of work a month was supported only by a reference to diabetes and sleep apnea. (Tr. 21). The ALJ found that Dr. Barr's conclusions regarding the level of disability caused by sleep apnea and diabetes were inconsistent with the evidence on the record and was not supported by objective evidence.

Based on a review of the record as a whole, the Court finds that the medical evidence in the record substantially supports the ALJ's conclusion. Although Dr. Barr continuously found that Plaintiff suffered from Type 2 diabetes, (Tr. 98, 99, 115, 116, 166, 169), she also found Plaintiff's diabetes well controlled in 2003. (Tr. 102). In addition, she noted that Plaintiff's "glycemic control [was] within goal range." (Tr. 97). In medical records from 2004, no mention is made that Plaintiff's diabetes was unable to be controlled or would render him unable to work. (Tr. 115). Again, in 2006, Dr. Barr did not note any problems with Plaintiff's diabetes. (Tr. 166). Furthermore, in his visits with a dietician in 2007 no mention was made that Plaintiff's diabetes was not controlled. (Tr. 148, 167). Indeed, the dietician noted that Plaintiff was doing well following his diet, exercise, and medication plan. (Tr. 148). In contrast, only two medical records from 2005 note that Plaintiff's diabetes was poorly controlled. (Tr. 168, 169). However, even if these two records could support conclusion contrary to that of the ALJ, the Court cannot reverse the Commissioner even if it, sitting as the finder-of-fact, would have reached a contrary result. See, Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Additionally, none of Plaintiff's medical records evince any indication that Plaintiff's diabetes was so poorly controlled that it would render him able to sit for only four hours a day or would cause him to miss four days a work a month.

As to fatigue providing a basis for Dr. Barr's RFC, the medical records from Plaintiff's visits to his treating physician do not contain any mention of Plaintiff's fatigue being so severe as

to render him unable to work. While numerous doctors found Plaintiff suffered from sleep apnea, (Tr. 108, 109, 110, 111), none of Plaintiff's medical records suggest that Plaintiff's sleep apnea was so severe that it could not be treated. In fact, Plaintiff's doctor at the Minnesota Regional Sleep Disorders Clinic found that "as he is unemployed and can sleep at his own discretion it is probable that he has lost his normal circadian rhythm and that much of his daytime sleepiness is due to a lack of a rigid schedule." (Tr. 111). Furthermore, as the ALJ pointed out, none of Plaintiff's doctors recommended that he change his CPAP or take any new medications for his sleep apnea and fatigue. (Tr. 19). Therefore, Plaintiff's doctors did not think his sleep apnea was so severe as to require new treatment. The stability of the treatment for sleep apnea and its relative conservative nature demonstrates that Plaintiff's sleep apnea is not as severe as he alleges or as Dr. Barr alleges in her RFC analysis.

In addition, while the ALJ found Plaintiff's back problems constituted a severe impairment, no mention was made of them by Dr. Barr as a basis for her RFC analysis. The medical records regarding Plaintiff's back pain support the ALJ's decision to refuse to grant controlling weight to Dr. Barr's RFC analysis. On July 7, 2007, Plaintiff's doctor at the Neurosurgery Clinic found 5 out of 5 strength throughout, normal bulk and tone, normal reflexes, no paraspinal tenderness, full range of motion with his lumbar spine and no increased pain with extension or flexion. (Tr. 138). The doctor further noted that Plaintiff suffered from mild degenerative disc disease of the L5-S1 level and a mild central disc bulge with no significant compression of the existing nerve roots. (Tr. 138). The doctor did not find anything that would cause his right knee pain or a suggestion of radicular pain. (Tr. 138). An April 2007 MRI confirmed multilevel degenerative disc disease with a disc protrusion. (Tr. 133). The doctor concluded that Plaintiff was not a good candidate for surgery and suggested conservative

treatment. (Tr. 138). The doctor was "very optimistic that we would get some improvement with Physical Therapy and perhaps epidural steroid objections." (Tr. 138). However, the record is bare of any evidence that Plaintiff attempted to follow up and treat the pain he claims is severe using these recommend methods. In fact, there is no evidence that Plaintiff even sought pain medication to deal with what he alleges is severe pain reaching a level of ten on a scale of ten at least two to three times per week. Therefore, the Court concludes that the ALJ acted within the scope of his discretion by rejecting the opinion of Dr. Barr and that the ALJ's decision was based on substantial evidence in the record as a whole.

In addition, the ALJ rejected Dr. Barr's RFC analysis because he did not find that Plaintiff's subjective complaints of pain were fully credible. (Tr. 21). The ALJ noted that although Plaintiff complained of severe pain, he was still able to take care of his personal needs, cook, do housework, do laundry, vacuum, shop, read, visit with other tenants, and handle his own finances and medication. (Tr. 20). According to the ALJ, these daily activities were inconsistent with Plaintiff's allegations regarding the severity of his symptoms. The ALJ correctly used such evidence as one factor in his decision not to place substantial weight on Dr. Barr's opinion. See Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) (rejecting treating and consulting physicians' opinion that claimant could only sit, stand, and walk a maximum of four hours per day when claimant reported attending her daughter's basketball games which were played sequentially and lasted more than four hours).

Instead of relying on the opinion of Dr. Barr, the ALJ placed significant weight on the RFC analysis by Dr. Horozaniecki. This decision was properly within the ALJ's discretion because the ALJ may discount the opinion of a treating physician if other assessments are supported by better, or by more thorough, medical evidence. See, Casey v. Astrue, 503 F.3d 687,

694 (8th Cir .2007) (affirming ALJ's decision to grant more weight to nonexamining reviewer's opinion because the opinion was consistent with record as a whole); Woolf, 3 F.3d at 1213 (stating that the court is "not allowed to substitute [its] opinion for that of the ALJ, who enjoys a closer position to the testimony in support of an application") (citing Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992) (stating that a court may not reverse merely because substantial evidence would have supported an opposite decision)).  The Court notes that the opinions of non-examining, consulting physicians standing alone do not constitute "substantial evidence." See Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir. 1999) (finding that, where no other evidence supported an ALJ's residual functional capacity determination, the opinion of a non-examining consulting physician was not "considered substantial evidence in the face of the conflicting assessment of a treating physician").  However, the situation in Jenkins is absent here.  In this case, the ALJ did not rely solely on Dr. Horozaniecki's opinion to reach his decision.  Rather, the ALJ relied on Dr. Horozaniecki's opinion as one part of the record, which as a whole, provides substantial support for his findings.

In the present case, the ALJ relied upon the opinion of the ME because it was "fully supported by the weight of the evidence of record." (Tr. 21).  When medical evidence conflicts, as is the case here, the obligation of the ALJ is to consider "all of the medical evidence, . . . weigh this evidence in accordance with the applicable standards, and attempt to resolve the various conflicts and inconsistencies in the record." Hudson ex. rel. Jones v. Barnhart, 345 F.3d 661, 667 (8th Cir.  2003).  The Court is persuaded that the ALJ properly weighed the medical opinions in the record and granted those opinions the weight they deserved considering the record as a whole.  See Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir.1995) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.")  Even

where evidence in the record might exist that could support a finding that Plaintiff's subjective complaints coincide with the objective evidence, the Court must uphold the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 956 F.2d at 838. In the present case, the Court finds that the ALJ's decision was supported by substantial evidence in the record, and therefore, it falls squarely within the zone of choice presented to him.

**B.      Whether the ALJ Improperly Failed to Re-Contact Plaintiff's Treating Physician to Clarify an Ambiguous Opinion**

Next, Plaintiff argues that the ALJ neglected to follow the SSA's own regulations which direct the ALJ to re-contact a claimant's treating source if the treating source's opinion contains alleged inconsistencies or ambiguities. (Pl.'s Mem., p. 10). Thus, according to Plaintiff, the ALJ had a duty to "attempt to contact Dr. Barr to resolve any alleged inconsistencies, rather than discounting her residual functional capacity opinions for the reasons contained in the ALJ's Decision." (Tr. 11).

In a social security hearing, the ALJ has a duty to fully develop the record. See Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). Although this duty may include re-contacting a treating physician for clarification of an opinion, the duty only arises if a crucial issue is undeveloped. Id. Here, the ALJ did not find any ambiguity in Dr. Barr's medical opinion or express that her opinion required clarification. Instead, the ALJ simply concluded that Dr. Barr's opinion was not supported by objective medical evidence in the record as a whole or by clinical findings or laboratory diagnostic techniques. (Tr. 21). As such, the ALJ did not have to re-contact Dr. Barr. See, 20 C.F.R. §§ 404.1512(e)-(e)(1); Hacker v. Barnhart, 459 F.3d 934, 938 ("The regulations provide that the ALJ should re-contact a treating physician when the information the physician provides is inadequate for the ALJ to determine whether the applicant

is actually disabled," but "[t]he regulations do not require an ALJ to recontact a treating physician whose opinion was inherently contradictory or unreliable"); <u>Goff v. Barnhart</u>, 421 F.3d 785, 791 (8th Cir. 2005) ("While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." )

Moreover, Plaintiff does not allege that any relevant medical records remain missing from the record.   The Plaintiff does not contend that there exist any additional medical records that should be obtained from Dr. Barr which would make it more likely that the Plaintiff would be found disabled.  Thus, Plaintiff has not established that the ALJ's alleged "failure to fully develop the record resulted in prejudice, and has therefore provided no basis for remanding for additional evidence." <u>Ellis v. Barnhart</u>, 392 F.3d 988, 994 (8th Cir. 2005) (citing <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir. 1995) (determining that reversal on the account of a failure to develop the record is only warranted where such failure is prejudicial)).

### C.   Whether the ALJ's Hypothetical Question to the Vocational Expert Was Correct

Lastly, Plaintiff argues that the hypothetical question posed by the ALJ to the VE does not constitute substantial evidence because it was based on an improper RFC formulated by the ALJ.  (Pl.'s Mem., p. 11).  As such, according to Plaintiff, the VE's conclusion regarding whether Plaintiff can perform work existing in significant numbers in the national and regional economy cannot be used to support the ALJ's decision.  (<u>Id</u>.)  After analyzing Plaintiff's RFC, the ALJ asked the VE whether, based on this RFC, the Plaintiff could perform his past work as a molding machine tender.  (Tr.21).  The VE concluded that since a molding machine tender constituted unskilled light work, and since a molding machine tender position as generally performed only requires an employee to stand for six hours a day, the job constituted unskilled

light work.  (Tr. 21).  The VE concluded that based on Plaintiff's age, education and RFC, he could perform his past work and that molding machine tender positions existed in significant numbers in the national and regional economy.  (Tr. 21).  Then, the ALJ relied on the VE's conclusion for his determination that the Plaintiff could perform his past work and was not disabled.  (Tr. 21).

"A hypothetical question must precisely describe a claimant's impairments so that the vocational expert may accurately assess whether jobs exist for the claimant." Howard v. Massanari, 255 F.3d 577, 581-82 (8th Cir.2 001).  In order to constitute substantial evidence, testimony from a VE must be based on a properly phrased hypothetical question. Id.; Roberts v. Apfel, 222 F.3d 466, 471 (8th Cir. 2000). A hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Roberts, 222 F.3d at 471.

The ALJ's RFC finding was supported by substantial evidence.  As discussed above the ALJ properly discounted the RFC of Dr. Barr in favor of the Dr. Horozaniecki's RFC. Furthermore, the ALJ made a credibility finding that the Plaintiff's subjective complaints of pain did not comport with his activities of daily living, work history, or the objective medical evidence.  As such, the Court finds that the ALJ's hypothetical question to the VE was proper and the VE's conclusions constituted substantial evidence upon which the ALJ could base his decision.  See Davis v. Apfel, 239 F.3d 962, 966. (8th Cir. 2001) ("A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ"); Rappoport v. Sullivan, 942 F.2d 1320, 1323-24 (8th Cir. 1991) (finding testimony from a vocational expert, based on a properly phrased hypothetical question, constitutes substantial evidence supporting the ALJ's decision).  Based on the above reasoning, the Court

finds remand inappropriate in this case and recommends that the Defendant's motion for summary judgment be granted.

## VI. CONCLUSION

**IT IS HEREBY RECOMMENDED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 10) be GRANTED and Plaintiff's Motion for Summary Judgment (Doc. No. 8) be DENIED.

Dated: January 26, 2011

s/ _[signature]_
Leo I. Brisbois
U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 9, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.